## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

David Burns

     v.                                                    Civil No. 06-cv-131-PB

Richard M. Gerry, Warden,
New Hampshire State Prison


### REPORT AND RECOMMENDATION


David Burns, an inmate at the New Hampshire State Prison,
has filed a petition for a writ of habeas corpus, pursuant to 28
U.S.C. § 2254, in which he asserts that his convictions were
obtained in violation of his right to due process under the
Fourteenth Amendment, his right to counsel under the Sixth and
Fourteenth Amendments, and his Fourteenth Amendment rights under
Miranda v. Arizona, 384 U.S. 436 (1966).  Before the court is
the respondent Warden's motion for summary judgment (doc. no.
33) and Burns's objection (doc. no. 44).  The court has referred
the motion to the magistrate judge to issue proposed findings of
fact and a recommendation regarding its disposition, and to hold
an evidentiary hearing, if necessary.  See U.S. Dist. Ct.,
D.N.H., Admin. Ord. No. 10-5 (June 25, 2010), superseded by
Local Rule ("LR") 72.1 (eff. Dec. 1, 2011) ("Admin. Ord. No. 10-
5"); see also 28 U.S.C. § 636(b)(1)(B); Rule 8(b) of the Rules
Governing Section 2254 Cases in the United States District

Courts ("§ 2254 Rules").  For the reasons that follow, the
Warden's motion (doc. no. 33) should be granted, and the § 2254
petition denied, without a hearing.

## Background

This case arises from Burns's conviction on charges
relating to his use of a curtain valence in an attempt to
strangle his girlfriend in Kingston, New Hampshire, in September
2002.  Burns was tried before a jury in January 2004.

The evidence before the jury included Burns's statements to
the police, admitted after the superior court had denied a
pretrial motion to suppress, as well as the testimony of the
victim, Dena Bouzianis, the investigating officers, and the
emergency department physician who treated Bouzianis.

Bouzianis testified that she and Burns were involved in a
relationship, that Burns often slept over, that he used crack
cocaine, and that he was jealous and insecure in their
relationship.  She further testified that at about 3:00 a.m. on
September 8, 2002, she woke up to find out that Burns was
neither in bed nor in the house.  When Burns came back,
according to Bouzianis, he confronted her and asked her whom she
had been sleeping with.  She testified that she accused him of
being high, and then went back to bed.  At that point, according
to Bouzianis's testimony, Burns straddled Bouzianis, started to

strangle her with his hands, then flipped her over, grabbed a curtain valence, and wrapped it around her neck.  Bouzianis testified that Burns told her not to lie to him, and that he would kill her and then himself.  She testified that she could barely talk, but pleaded with him to stop.  She estimated at trial that the attack lasted about thirty minutes, and that towards the end of the ordeal, Burns choked her such that she lost consciousness.

Bouzianis testified that when she came to, she could not focus and was confused, but was able to talk with Burns to calm him down.  Bouzianis testified that she waited until Burns was almost asleep, and then ran outside to her mother's house two houses away.  She testified that once there, she called 911.  The police arrived.  Bouzianis went to the emergency department with her mother, and the emergency department physician testified that Bouzianis had bilateral hemorrhaging in her eyes, bruising around her neck, and petechial hemorrhages in her throat, consistent with having a ligature like the curtain valence pulled tightly around her neck.

After Burns came out of Bouzianis's house, the Kingston Police Department arrested and handcuffed Burns, and brought him to the Kingston Police Department.  Kingston Police Officer Peterson testified that he read Burns a Miranda warning at the

police station, and that Burns understood what was said to him and spoke in a logical, coherent way.

State Police Trooper Martin testified that he interviewed Burns for about three hours, in a relaxed and conversational manner, after first ascertaining that Peterson had read Burns his Miranda rights.  Martin testified that Burns was upset during the interview, but also appeared to understand Martin. According to Martin, Burns admitted that he had gotten "high" that night, and, when Martin told Burns that he did not believe Burns's initial story that Bouzianis had tried to hang herself, Burns told Martin that he had not been telling the truth, that he was "not innocent," and wanted help.  Burns became upset and cried, according to Martin, while saying that he did not deserve to live, that he was ashamed for his daughters, and that he had "put that thing around [Bouzianis's] neck," not to kill her, but only to scare her.  Martin testified that Burns refused to provide a written statement, but agreed to review Martin's notes and to sign them.

Bouzianis testified that after Burns had been arrested, he contacted her on several occasions.  She further testified that Burns tried to get her to lie to the police about the cause of her injuries.

The jury convicted Burns after a three day trial.  Burns, acting pro se, filed a motion to dismiss his trial counsel prior

to the sentencing hearing, asserting claims of ineffective assistance of counsel.  The superior court denied that motion and sentenced Burns to state prison in 2004.  The New Hampshire Supreme Court ("NHSC") affirmed Burns's convictions.  See State v. Burns, No. 2004-0533 (N.H. June 22, 2005).

Burns filed the instant petition for federal habeas relief in 2006, shortly before filing a motion for a new trial in state superior court.  The superior court judge who presided at Burns's trial denied the motion for a new trial after a hearing. The NHSC declined to accept Burns's application for discretionary review of that order, without commenting on the merits of the superior court's ruling.  See State v. Burns, No. 02-S-2540 (N.H. Super. Ct., Rockingham Cnty., June 9, 2008) ("Super. Ct. Ord."), appeal declined, No. 2008-0493 (N.H. Aug. 14, 2008).  This court stayed Burns's § 2254 petition while he pursued additional state court remedies on claims not relevant to the matters before this court.

This court lifted the stay after Burns notified the court that he had exhausted his state court remedies, see Status Report (doc. no. 21).  On May 27, 2010, see Order (doc. no. 28), the court ordered the following claims served upon the respondent:

- The trial court, in denying Burns's motion to suppress statements he made during a custodial interrogation,

erred in finding that Burns validly waived his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

- Burns's convictions were obtained in violation of his Fourteenth Amendment right to due process because the trial judge interviewed a juror off the record, without counsel present, to determine if the juror's unauthorized contact with a police officer mid-trial had biased the juror.

- The state interfered with Burns's Sixth and Fourteenth Amendment right to counsel of his own choosing by threatening that Burns would be subjected to charges stemming from his misuse of his daughter's trust funds to pay his private defense counsel's retainer, by recommending that private defense counsel withdraw, and by filing a motion to clarify defense counsel's status, which caused private defense counsel to withdraw from the case.

- Burns's court-appointed trial counsel provided ineffective assistance, in violation of Burns's Sixth Amendment rights, by:

    (a) deviating from the trial strategy of innocence approved by Burns;

    (b) misunderstanding the law as to attempted murder;

    (c) failing to investigate certain relevant facts;

    (d) introducing prior bad acts evidence at trial;

    (e) failing to interview and/or call certain rebuttal witnesses;

    (f) failing to object to prior bad acts evidence;

    (g) failing to object to the prosecutor's closing argument;

    (h) failing to understand or investigate Burns's medical or mental health status;

(i) failing to object to an off-the-record chambers conference with a juror;

(j) failing to file motions to exclude evidence of Burns's jail time on dismissed charges, his time on probation, his time undergoing treatment at Portsmouth Pavilion, and the allegations that he misappropriated his daughter's trust fund; and

(k) the cumulative effect of these errors.

The Warden filed an answer (doc. no. 30) and moved for summary judgment (doc. no. 33). Burns filed an objection (doc. no. 44). The motion (doc. no. 30) and petition are before this magistrate judge for a report and recommendation. See Order (Oct. 19, 2011) (reopening motion); see also Admin. Ord. 10-5.

## Discussion

I.  <u>Summary Judgment</u>

In the context of a habeas corpus proceeding, summary judgment is appropriate when the nonmoving party fails to show a genuine issue of material fact that would require an evidentiary hearing. See <u>Guy v. Cockrell</u>, 343 F.3d 348, 351-52 (5th Cir. 2003) (district court may deny § 2254 petition and grant warden's motion for summary judgment where pleadings, admissions, discovery materials, and affidavits show that warden is entitled to judgment as matter of law); <u>see also</u> Fed. R. Civ. P. 56(c) (summary judgment appropriate where there is no genuine issue of material fact, and movant is entitled to judgment as matter of law); <u>cf.</u> <u>Teti v. Bender</u>, 507 F.3d 50, 62 (1st Cir.

2007) (before granting evidentiary hearing, habeas judge "'must [first] consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief'" (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).  As explained more fully below, Burns has failed to show that there is a genuine issue of material fact to either warrant a hearing or preclude summary judgment in this case.

II.   Standard for Habeas Review

     Federal courts reviewing claims asserted in § 2254 petitions apply a highly deferential standard of review to state court findings and legal conclusions.  Federal habeas relief is not available as to any claim adjudicated on the merits in state court, unless the state court's legal conclusions or application of legal standards to settled facts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see also Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir.), cert. denied, 132 S. Ct. 866 (2011).

     If the issue is one of fact, the habeas court must "apply a presumption of correctness to the trial court's factual findings and also examine whether there has been an unreasonable

determination of the facts in light of the evidence presented in
the state court proceeding." John v. Russo, 561 F.3d 88, 92
(1st Cir. 2009); see also 28 U.S.C. § 2254(d)(2) (to prevail,
petitioner must show that state court adjudication "resulted in
a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court
proceeding"); 28 U.S.C. § 2254(e)(1) (petitioner must offer
"clear and convincing" evidence to rebut presumption that state
court fact findings are correct).

For the purposes of this court's review of Burns's claims,
the relevant state court decisions are the NHSC decision
affirming Burns's conviction, with respect to the Miranda claim,
and the superior court order as to the remaining claims.  See
Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  The NHSC rejected
Burns's Miranda claim on the merits in his direct appeal of his
convictions.  See State v. Burns, No. 2004-0533 (N.H. June 22,
2005).  The superior court, in denying Burns's motion for a new
trial, rejected Burns's ineffective assistance of counsel,
interference with counsel of Burns's choice, and due process
claims.  See State v. Burns, No. 02-S-2540 (N.H. Super. Ct.,
Rockingham Cnty., June 9, 2008), appeal declined, No. 2008-0493
(N.H. Aug. 14, 2008).   The NHSC declined to hear an appeal of
that order, which renders the superior court order the last

decision addressing the merits of Burns's § 2254 claims other than his Miranda claim.  See Ylst, 501 U.S. at 803-04.

III. *Miranda* Claim

In his § 2254 petition, Burns has claimed that the state courts erred in finding that he waived his Miranda rights and in failing to suppress statements that Burns gave to the police. The Warden contends that Burns's Miranda claim is without merit.

The trial court held a hearing on Burns's pretrial motion to suppress his statements.  Kingston Police Officer Peterson testified that he read Burns his rights from a department-issued Miranda card.  Peterson testified that Burns signed the back of the card, which indicated that Burns waived his rights, and that Burns appeared to understand what he was signing.

Trooper Martin testified that he interviewed Burns after first ascertaining from Officer Peterson that Burns had been read his rights.  Martin's interview of Burns lasted three hours and included a break.  Martin testified that Burns appeared coherent and was appropriately responsive to questions, and that he made incriminating statements, including that he had put the "thing" around the victim's neck.

After the evidentiary hearing on the motion to suppress, the trial court issued a written opinion denying the motion. See Order on Def.'s Mot. to Suppress (doc. no. 30-1, at 17-22).

The trial court found that there was no evidence that Burns was under the influence of drugs or alcohol when he made the inculpatory statements in question.  The court specifically found that Burns had knowingly, intelligently, and voluntarily waived his Miranda rights.

The NHSC, in Burns's direct appeal of his convictions, cited a state constitutional standard for evaluating whether a defendant has validly waived his Miranda rights, which places a higher burden of proof on the prosecutor than is required by federal law.  See Burns, No. 2004-0533, slip op. at 2-3 (under New Hampshire law prosecution required to prove beyond a reasonable doubt that defendant knowingly, intelligently, and voluntarily waived his Miranda rights); cf. Berghuis v. Thompkins, 130 S. Ct. 2250, 2260-61 (2010) (under federal law prosecution must prove by preponderance of evidence that Miranda waiver was knowing and voluntary (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)).  The NHSC held that the record on Burns's motion to suppress indicated that while Burns appeared upset, he also appeared coherent and was appropriately responsive to questions, and that nothing in his demeanor led the police to believe he was under the influence of drugs or alcohol.  Burns, No. 2004-0533, slip op. at 2.  Based on the record, the NHSC, like the Superior Court, concluded that the

prosecution had carried its burden, and that the statements at issue were properly admitted at trial.

The state court found that, beyond a reasonable doubt, Burns's statements were knowingly and voluntarily made, and therefore, were properly admitted at trial.  The state courts' decisions were reasonable in light of the state court record, as set forth above.  Further, the NHSC did not unreasonably apply pertinent federal law in upholding the denial of the motion to suppress, and in affirming Burns's conviction.  Therefore, pursuant to 28 U.S.C. § 2254(d), Burns has failed to show that he is entitled to federal habeas relief as to his <u>Miranda</u> claim. Accordingly, this court should grant the motion for summary judgment and deny the § 2254 petition, as to the <u>Miranda</u> claim.

IV.   <u>Interference with Counsel of Choice</u>

   A.   <u>Contentions</u>

Burns claims in his petition that the state interfered with his right to counsel of his own choosing (1) by threatening that Burns would be charged with misappropriating his daughter's trust funds to pay the retainer for his private defense counsel, Attorney Bennett; (2) by warning Attorney Bennett that he could be called as a witness as to the trust fund misappropriation charges, (3) by recommending that counsel withdraw, and (4) by filing a motion to clarify counsel's status, all of which led

Attorney Bennett to file his own motion to withdraw.  The
superior court held a hearing, granted the motions, continued
the trial, and appointed new trial counsel for Burns.

Burns asserts that the trust fund misappropriation charges
were false, and that the superior court erred in allowing
Attorney Bennett to withdraw.  The Warden maintains that Burns's
claim lacks factual support and must fail as a matter of law.

B.   Standard

The Sixth Amendment right to counsel includes the right to
choose one's own counsel.  See United States v. Gonzalez-Lopez,
548 U.S. 140, 144 (2006).  That right, however, is
"circumscribed in several important respects."  Wheat v. United
States, 486 U.S. 153, 159 (1988).  The chosen attorney must be,
among other things, "willing to represent the defendant, free
from certain conflicts of interest, [and] compliant with the
rules of the court."  United States v. Stein, 541 F.3d 130, 154
n.14 (2d Cir. 2008) (citing Wheat, 486 U.S. at 159-60).

C.   Superior Court Findings

1.   Status of Counsel Hearing

During the hearing on the status of counsel, Attorney
Bennett notified the court that the Kingston police had
interviewed him, and that the prosecutor had told him that there
would be new criminal charges filed against Burns.  Attorney

13

Bennett told the court that he was particularly concerned that
he would be called as a witness in an ongoing family court
proceeding between the victim and Burns, involving the alleged
misappropriation of certain trust funds.  The trial court had
before it an order issued by the family court, in a proceeding
involving Burns and the victim, seeking to recoup funds
allegedly improperly distributed by Burns.  Based on counsel's
representations, the family court order, and other evidence
before it, the superior court found that there was a potential
that Attorney Bennett would be called as a witness against
Burns.  The court specifically informed Burns that those
circumstances presented a risk of a conflict developing between
counsel and his client, warranting counsel's withdrawal.  The
court granted the motion to withdraw, continued the trial, and
informed Burns of his right to have counsel appointed for him if
he could not afford to retain his own lawyer.  <u>See</u> Tr. of Status
of Counsel Hearing (doc. no. 33-6).

### 2.   <u>Motion for New Trial</u>

In his motion for a new trial, Burns raised a Sixth
Amendment claim in challenging the pretrial order permitting
Attorney Bennett to withdraw.  Assistant Rockingham County
Attorney Bolton, who was the prosecutor in Burns's criminal
trial, filed an objection to Burns's post-conviction motion.

14

Attorney Bolton stated that he had learned shortly before filing the status of counsel motion that the FBI and state law enforcement agents were investigating whether Burns had misappropriated Burns's daughter's trust funds, and that the family court had issued an order to recoup funds that were improperly distributed to persons, including attorneys.

The superior court adjudicated the merits of Burns's Sixth Amendment interference with counsel claim in denying Burns's motion for a new trial.  Based on the record before it on the motion for a new trial, the superior court found that the state filed its motion to clarify status of counsel "out of an abundance of caution," and not improperly, after informing Attorney Bennett that he might be a witness against Burns in family court and in a future criminal case.

In both its ruling on the status of counsel, and in denying the motion for a new trial, the superior court found that the risk of a conflict developing between Burns and Attorney Bennett was real, and that the state had not acted improperly either in telling Attorney Bennett that he might be a witness or in filing the status of counsel motion.  The court also found that Attorney Bennett had made an appropriate request to withdraw in light of his concern that he would be a witness in family court and could be called to testify if charges were filed.

D.   <u>Analysis</u>

This court finds reasonable, in light of the state court record, the superior court's finding that there was a risk of a conflict developing between Attorney Bennett and Burns relating to the retainer, warranting counsel's withdrawal.  <u>Cf.</u> N.H. R. Pro. Conduct 1.7(a)(2) ("concurrent conflict of interest" exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest of the lawyer"); <u>Wheat</u>, 486 U.S. at 164 ("serious potential for conflict" is sufficient to overcome presumption in favor of counsel of choice, in cases in which multiple co-defendants are represented by same counsel).  Similarly, the court's findings as to the propriety of permitting counsel to withdraw were reasonable in light of the record.  Because the superior court's adjudication of this Sixth Amendment issue was not unreasonable in light of the record, and neither contrary to nor an unreasonable application of established federal law, the court should grant the respondent's motion and deny the petition as to Burns's interference with counsel claim.

V.   <u>Potentially Biased Juror Due Process Claim</u>

In his motion for a new trial and in his § 2254 petition, Burns has asserted that his convictions were obtained in

16

violation of his Fourteenth Amendment right to due process
because the trial judge interviewed -- in chambers, off the
record, and without counsel present -- a juror potentially
biased by contact with a police officer.  The Warden has moved
for summary judgment on this claim, asserting that the issue was
procedurally defaulted in the state courts and also lacks merit.

   A.   Background

   On the third day of Burns's criminal trial, a sitting juror
accepted a ride to court from a Kingston police officer who
stopped when he saw the juror's car had broken down.  The
officer did not testify in the case, but attended trial daily.

   Shortly after learning about the juror's contact with the
officer, the superior court met with counsel, interviewed the
juror in chambers alone and off the record, and then summarized
the interview on the record in the presence of counsel.  The
court's summary indicates that the juror said that his contact
with the officer "clearly, absolutely" had not affected his
ability to sit on the case and had not caused him to favor the
state.  The juror told the court that he had invested time, had
paid attention, and was dedicated to seeing the case through.
After summarizing the interview on the record, the court asked
if counsel had objections.  Defense counsel conferred with
Burns, then stated that they had no objection to the juror.

17

B.   Analysis

    1.   Procedural Default

If "the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted."  Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991)).  The Warden, contending that the claim was procedurally defaulted, cites the superior court's conclusion that Burns had waived the "juror misconduct" claim by raising but not briefing it in his direct appeal.

This court notes that the superior court cited two alternative grounds for rejecting Burns's due process claim:  a ruling that the "juror misconduct" claim was waived, and an alternative ruling that the claim of error lacked merit.  See Super. Ct. Ord., slip op. at 3.  The NHSC declined to accept an appeal of the superior court order.  Thus, the last state court that reviewed the claim issued a ruling on the merits.

    2.   Merits

Burns contends that the procedures employed by the superior court concerning its determination of a juror's potential bias violated his right to due process.  In the state courts, Burns challenged the court's failure to record its interview on the record in the presence of counsel.  In his § 2254 petition,

Burns asserts that the trial court erred in failing to hold a
hearing on the record in the presence of counsel as to whether
the juror's contact with the officer was prejudicial to Burns.

Burns has failed to demonstrate that the superior court's
findings on the merits, or the procedures that it followed, were
either unreasonable or contrary to any clearly established
federal law.  The United States Supreme Court has held that the
Due Process Clause does not require that all contact between the
judge and a juror occur on the record.  "'The defense has no
constitutional right to be present at every interaction between
a judge and a juror, nor is there a constitutional right to have
a court reporter transcribe every such communication.'"  United
States v. Gagnon, 470 U.S. 522, 526 (1985) (citation omitted).

The Supreme Court has held that a post-trial evidentiary
hearing is constitutionally sufficient to decide allegations of
juror partiality.  See Smith v. Phillips, 455 U.S. 209, 218
(1982); Remmer v. United States, 347 U.S. 227, 230 (1954).  The
Supreme Court has never held, however, that a hearing or any
other particular procedure must be employed when the trial court
inquires in the first instance into potentially prejudicial
contacts between jurors and third parties, after disclosing to

19

counsel the fact of the contact.[1]  There is thus no clearly

"established federal law," for the purposes of 28 U.S.C.

§ 2254(d) ("as determined by the Supreme Court" of the United

States), governing the form that the trial court's inquiry must

take in determining if a juror's ability to decide a case solely

on the evidence has been compromised by a third party contact.[2]

The procedures employed by the superior court in Burns's

case included promptly notifying counsel about the contact,

meeting privately in chambers with the juror to investigate

whether the juror was biased, and, upon being assured by the

juror more than once that he could remain impartial, immediately

summarizing the colloquy on the record, in the presence of

---

[1]The First Circuit has indicated that federal district court
judges have discretion in federal criminal cases to determine
which procedures to follow in inquiring into potentially
prejudicial contacts involving jurors.  See United States v.
Ortiz-Arrigoitia, 996 F.2d 436, 443 (1st Cir. 1993) ("trial
judge is not . . . shackled to a rigid and unyielding set [sic]
rules and procedures that compel any particular form or scope of
inquiry").

[2]Burns's citation to United States v. U.S. Gypsum Co., 438
U.S. 422 (1978), does not provide authority for finding that the
superior court was required to hold a hearing on the record in
the presence of counsel when it inquired into whether the juror
could remain impartial.  In Gypsum, the judge in a federal
criminal trial had provided a supplemental instruction ex parte,
off the record, to a deliberating jury's foreman, and the
Supreme Court, in exercising its supervisory powers over the
federal courts, deemed the instruction to be reversible error.
See id. at 462.  Gypsum did not concern whether the Due Process
Clause requires a court to hold a hearing on the record in the
presence of counsel when inquiring into a juror's potential
bias.

counsel.  The court gave counsel an opportunity to object at
that point.  After consulting with Burns, counsel stated that
the defense would not object, and counsel requested no further
procedures.  The superior court's failure to provide Burns with
additional procedural protections, under the circumstances, was
not contrary to any clearly established federal law.

In ruling on the post-conviction motion for a new trial,
the superior court found in light of the record that further
voir dire would have been fruitless mid-trial, given that the
juror had clearly told the judge that he could remain impartial.
The superior court's findings are reasonable in light of the
record before that court, and they are entitled to a presumption
of correctness that Burns has not rebutted.  Cf. Rushen v.
Spain, 464 U.S. 114, 120 (1983) (per curiam) (findings as to
content of third party communications with juror and "their
effect on juror impartiality are questions of historical fact"
which are entitled to presumption of correctness upon federal
habeas review).  Accordingly, the motion for summary judgment
should be granted, and the petition denied, as to the claim
asserting a due process violation regarding the off-the-record
court interview of a juror.

VI.   Ineffective Assistance of Counsel

Burns has asserted in his federal habeas petition that his court-appointed trial counsel performed deficiently, in a manner prejudicing Burns and violating his Sixth Amendment right to the effective assistance of counsel.  Burns has listed in his petition the alleged errors he asserts counsel made.  The Warden asserts that Burns procedurally defaulted a number of the cited bases for his Sixth Amendment claim, and that, in any event, as to all of the ineffective assistance of counsel claims, trial counsel's performance was neither deficient nor prejudicial.

A.   Sixth Amendment Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that trial counsel's performance was deficient and that prejudice resulted.  See Harrington v. Richter, 131 S. Ct. 770, 787 (2011).  In order to satisfy the "[d]eficient performance" prong, a petitioner must prove that trial counsel's representation fell below "'an objective standard of reasonableness.'"  Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011) (citation omitted).  Counsel's performance is deficient "only if no competent attorney would have acted as [counsel] did."  Id.

To establish the second prong of the ineffective assistance inquiry, that prejudice resulted from counsel's deficient performance, a petitioner must demonstrate that there is a

reasonable probability that the trial would have had a more favorable outcome, but for trial counsel's unprofessional errors.  Id.; Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009).  A court may dispose of the ineffective assistance claim with a prejudice analysis alone.  Strickland v. Washington, 466 U.S. 668, 697 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").  In ruling on Burns's Sixth Amendment claims in denying the motion for a new trial, the superior court generally applied a standard applicable to state constitutional claims of ineffective assistance of counsel that is equivalent to the standard set forth in Strickland.  See State v. Roy, 148 N.H. 662, 664, 814 A.2d 169, 171 (2002) ("The standard for determining whether counsel's performance is constitutionally deficient is the same under both the [New Hampshire] and Federal Constitutions.").

    B.   Cited Issues

        1.   Deviating from Strategy of Innocence

    Burns has asserted in the § 2254 petition that he authorized counsel to pursue a strategy of innocence at trial, but that, beginning with his opening statement and continuing through closing argument, trial counsel departed from that strategy without Burns's approval, to Burns's detriment.  Burns

points to counsel's opening statement, in which counsel failed to tell the jury that Burns was not with the victim at the relevant time, and counsel's closing argument, in which counsel argued that Burns lacked premeditation.

Burns's trial counsel testified at the hearing on the motion for a new trial that he had consulted with Burns regarding the structure and content of his opening statement, and regarding his alternative defense theories, presented in his closing argument, that the victim had attempted to kill herself, and that Burns had not acted with premeditation.  Trial counsel testified that Burns had instructed him not to argue for a lesser-included offense, and that counsel had honored that instruction.  Trial counsel also testified that he had discussed with Burns the problems presented by Burns's incriminating statements, which had not been suppressed and would therefore have to be addressed at trial.

The superior court credited as true counsel's testimony as to the bases for his strategic decisions, and the superior court made findings accordingly.  In denying Burns's motion for a new trial, the superior court rejected Burns's claim regarding counsel's failure to stick with a defense of innocence.  Those findings are reasonable, in light of the state court record, which included Burns's attorney's explanation of his own reasoning and strategic decision-making.

The United States Supreme Court has established "that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).  The superior court's findings concerning counsel's exercise of competent strategic, discretionary decision-making at Burns's trial is neither contrary to clearly established federal law, nor an unreasonable application of the law to the facts.  Accordingly, the court should grant summary judgment and deny the petition as to this aspect of the Sixth Amendment claim.

### 2.   Misunderstanding Law on Attempted Murder

Burns asserted here, as he did in his motion for a new trial, that counsel misunderstood that a conviction for attempted murder in New Hampshire does not require proof that the defendant acted with premeditation and deliberation, and that counsel's mistaken understanding prejudiced Burns.  Burns asserts that his trial attorney proposed a jury instruction to the court that included a premeditation and deliberation element.  Burns further points to his trial counsel's statement to the court during a trial recess that counsel was not prepared to discuss a specific case, and counsel's closing argument

stressing the lack of premeditation and deliberation, when those issues were not elements of attempted murder.

In the hearing on the motion for a new trial, counsel testified that he was in fact familiar with the pertinent state law and had offered the jury instruction to persuade the court to provide an instruction which was more favorable to the defense.  Moreover, counsel testified that his strategy of arguing lack of premeditation and deliberation at trial was intended to show a lack of intent to commit attempted murder because the absence of evidence of premeditation may be used to show a lack of intent.

Based on the record before it, the superior court found that counsel was well-prepared and familiar with the pertinent law.  The superior court also found that counsel's argument manifested an exercise of discretionary trial tactics akin to the common practice of arguing absence of motive, where motive (like premeditation or deliberation) is not an element of the crime.  Those findings are reasonable in light of the record before the court and do not represent an unreasonable application of clearly established federal law.  See Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) ("counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate

defense strategy at that stage").  Accordingly, the motion for
summary judgment should be granted, and Burns's habeas petition
denied, with respect to the Sixth Amendment claim asserting
counsel's misunderstanding of state law.

### 3.   Failing to Investigate Mental Health Issues

Burns maintains that his trial counsel did not investigate
issues concerning the state of Burns's mental health at the time
Burns made incriminating statements to the police.  Burns
highlights, among other things, counsel's failure to review
treatment records from Burns's post-arrest detention at the
Rockingham County Department of Corrections, for the purpose of
challenging the voluntariness of Burns's statements, and
counsel's failure to raise, as an issue pretrial and at trial,
Burns's mental health and medicated status.

The evidence at the hearing on the motion for a new trial
included testimony that counsel had reviewed documents compiled
by Burns's prior attorneys as to Burns's possibly reduced mental
capacity because of cocaine use or mental illness.  Counsel
testified that he knew Burns was taking medications for mental
health issues, and he had assigned a social worker to
investigate Burns's mental health.  The social worker reviewed
the relevant records and Burns's history, and provided an
opinion that Burns's mental health issues were consistent with

drug abusing behavior.  Counsel explained that Burns had not appeared to be exhibiting withdrawal symptoms or erratic behavior when interviewed by the police, and counsel chose not to raise the mental health issues at trial fearing that it would risk highlighting Burns's drug abusing behavior for the jury.

After the hearing, the superior court found that counsel had investigated issues relating to Burns's mental health and drug abuse and had found no indication that Burns suffered from withdrawal symptoms at the time he made statements to the police.  The superior court also found that counsel made a tactical choice not to challenge the reliability of the statements after determining that the challenge would not have been successful as a motion to suppress the statements had been denied.  The superior court rejected Burns's claim that counsel failed to investigate issues related to Burns's mental health on the merits.

The superior court's relevant findings about counsel's investigation of issues relating to Burns's mental health are reasonable, in light of the record before the court.  Similarly, the superior court's finding that counsel reasonably exercised his discretionary decision-making relating to the mental health issues does not constitute an unreasonable application of federal law to the facts in the state court record.  See Strickland, 466 U.S. at 690-91 ("strategic choices made after

thorough investigation of law and facts relevant to plausible
options are virtually unchallengeable; and strategic choices
made after less than complete investigation are reasonable
precisely to the extent that reasonable professional judgments
support the limitations on investigation").  Accordingly, the
Sixth Amendment claim based on the alleged failure to
investigate Burns's mental health status should be rejected, and
summary judgment entered in favor of respondent on this issue.

### 4.   Failing to Interview and/or Call Witnesses

Burns has asserted that trial counsel's performance was
deficient because counsel did not interview and/or call as
witnesses the victim's brother Ryan Ruddy, Burns's friend Randy
Tetreault, and Burns's mother, Dorothy Wright.  Burns asserts
that each of them could have served as either a favorable
character witness or rebuttal witness to contradict the victim's
story about the assault and her relationship with Burns.

The Warden asserts in the motion for summary judgment that
Burns has not demonstrated the prejudice necessary to prevail on
this aspect of his Sixth Amendment claim.  The state court
rejected Burns's claim regarding the witnesses, both on the
merits and on its finding that the claim had been waived, in
denying Burns's motion for a new trial.

At the hearing on the motion for a new trial, Burns's trial counsel testified generally that offering any favorable character evidence risked opening the door to damaging evidence of bad character.  Such damaging evidence included, in particular, allegations that Burns:  had misappropriated his child's trust funds, had violated his bail conditions, and had assaulted Bouzianis in the past.

As to the witnesses cited in Burns's petition, Burns's counsel specifically testified that he had interviewed Burns's mother, Dorothy Wright, and his friend Randy Tetreault, and had decided not to call either of them for strategic reasons. Counsel concluded that the mother would not be helpful to Burns, that she would have appeared biased and not credible, and that she would have been difficult to control.  In consultation with Burns, counsel decided against calling the mother.

Counsel testified that he interviewed Tetreault and determined that he could have testified that while Burns was out on bail after the alleged offense, Burns and the victim maintained an affectionate relationship.  Counsel decided not to call Tetreault because his testimony would have opened the door to evidence about Burns violating bail conditions by having contact with the victim and by using illegal drugs.

This court concludes that the superior court's rejection of the ineffective assistance of counsel claim as to counsel's

failure to call certain witnesses does not constitute an
unreasonable application of federal law.  The decision not to
call such witnesses for strategic reasons does not constitute
ineffective assistance of counsel.  See Lema v. United States,
987 F.2d 48, 54 (1st Cir. 1993) ("The decision whether to call a
particular witness is almost always strategic, requiring a
balancing of the benefits and risks of the anticipated
testimony."); see also Pina v. Maloney, 565 F.3d 48, 53 (1st
Cir. 2009) (strategic decision not to call alibi witness did not
constitute ineffective assistance of counsel).  Accordingly, as
to these witnesses, Burns has failed to show that the superior
court's findings were unreasonable or contrary to established
federal law, as to the "deficient performance" prong of an
ineffective assistance claim.  See Strickland, 466 U.S. at 687.

     With respect to not calling the victim's brother as a
witness, counsel testified that he had asked an investigator to
interview him.  The investigator was unable to locate the
brother, and follow up inquiries yielded the possibility that
the brother was out of state.  Counsel testified that his
reasons for not tracking down the brother included that the
brother could be biased towards his sister and might not be
easily controlled or otherwise favorable for Burns.

     As to the issue of prejudice relating to the witness's
brother, the superior court found that counsel introduced the

substance of some of what Burns claimed the brother could have testified to through other witnesses, namely, that the brother was in the basement apartment on the night of the assault and kept handguns there.  The trial transcripts show that, while counsel did not introduce evidence that the brother had heard no noises on the night at issue, counsel argued to the jury that the state did not have a witness to corroborate the victim's testimony, and that her story did not make sense because she made the unlikely choice of running to her mother's house instead of waking up her heavily-armed brother in the basement.

Given counsel's success in introducing relevant parts of the brother's testimony through the investigating officers, and the abundant evidence in the record including Burns's incriminating statements, the victim's testimony, and the medical evidence, this court finds ample support for the reasonableness of the superior court's finding that Burns failed to prove that any prejudice resulted from counsel's failure to interview and/or call the victim's brother and the other witnesses at issue.  The superior court did not unreasonably apply established federal law in making its findings concerning counsel's performance regarding the witnesses.  Accordingly, as to Burns's claims regarding the witnesses who were not interviewed and/or called to testify, the court should grant the motion for summary judgment and deny the petition.

5.   Failure to Investigate Certain Facts

a.   Curtain Valence and Pendant

Burns asserts in his petition that counsel's performance was deficient because (a) counsel did not examine or submit for DNA testing the curtain valence to find out if Burns's DNA was in the fibers; and (b) counsel did not examine the fragile pendant worn by the victim to determine if it had been damaged. The Warden counters in his motion that this aspect of the ineffective assistance of counsel claim lacks merit given the overwhelming evidence of guilt in the record.  The superior court denied the motion for a new trial with respect to these issues, ruling that the claim was procedurally defaulted, but also finding that the claim lacked merit.

At the superior court hearing on the motion for a new trial, Burns's trial counsel testified that he did not seek to have the valence tested for Burns's DNA in part because he was concerned that a DNA analysis could generate unhelpful evidence simply because Burns had spent time in the room at issue and may have left his DNA on the valence without using it as a weapon. Counsel further testified that he believed that further examination of the pendant and valence was unnecessary, insofar as he was pursuing a strategy of challenging the State's failure to offer corroborating physical evidence.  His purpose in

33

pursuing that strategy was to argue to the jury that, taken along with the inconsistencies in the victim's statements, the lack of corroboration generated a reasonable doubt and would yield a finding of not guilty.

In denying the motion for a new trial, the superior court found, as to the valence and pendant, that counsel's performance was adequate.  The superior court's findings regarding these issues are not unreasonable in light of the state court record. Because the state court did not unreasonably find any relevant facts or unreasonably apply clearly established federal law to Burns's case, this court in reviewing the § 2254 petition should grant the motion for summary judgment and deny the petition as to this aspect of Burns's Sixth Amendment claim.

### b.    Remaining Trial Preparation Issues

Burns has also asserted in his § 2254 petition that counsel provided ineffective assistance by failing to investigate:  (1) whether there was a tape of a 911 call made by the victim; (2) the victim's claims that Burns harassed her; and (3) the timing and nature of the injuries depicted in photos of the victim. The superior court's order on the motion for a new trial does not include any explicit findings as to counsel's decision-making with respect to those issues.  In general terms, however, the superior court ruled that Burns's claim that counsel had

failed to prepare adequately for trial had been raised and
rejected when the court denied Burns's post-trial motion to
dismiss counsel, and that even if the failure to investigate
claim were preserved, it lacked merit.  The Warden concedes in
the motion for summary judgment filed here that the scope of the
superior court's merits ruling could be fairly construed to
cover the issues of trial preparation listed in Burns's
petition, and further asserts that Burns has failed to show
prejudice.

The state court record includes Burns's incriminating
statements, the damaging testimony of a physician who treated
the victim, and the victim's testimony.  To the extent that
Burns asserts that his trial attorney failed to properly
confront this evidence, nothing in the state court record
suggests that any information that defense counsel might have
uncovered through further preparation or investigation would
have altered the outcome of the trial.  See generally
Strickland, 466 U.S. at 694 (to establish ineffective assistance
of counsel, petitioner must show that "there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different," which
requires petitioner to show "a probability sufficient to
undermine confidence in the outcome").  Burns has failed to
point to any errors of counsel with respect to trial preparation

and investigation that undermine confidence in the outcome; to the extent that the superior court's finding that the trial preparation claim was "meritless" implies a finding that Burns did not show prejudice, that finding is reasonable in light of the record.  Accordingly, the court should grant the motion for summary judgment, and deny the petition, as to these trial preparation issues.

>        6.    Objections to Prior Bad Acts and Other Testimony

In his § 2254 petition, Burns has asserted that trial counsel's performance was deficient because counsel did not object to the admission of prior bad acts evidence at trial.  In responding to the motion for summary judgment, Burns has clarified that his claim relates to counsel's failure to object to testimony regarding Burns's time in jail, time on probation, being charged with an offense that was subsequently dismissed, and doing drugs in jail.  Additionally, Burns cites counsel's failure to object to an investigating officer's testimony that he saw a man with a gun come out of a basement apartment, given that the officer expressed uncertainty as to whether it was during the relevant time frame or on an earlier call.

Respondent has asserted, and the superior court specifically found, that the Sixth Amendment claim concerning counsel's failure to object to witness testimony was

procedurally defaulted.  As announced by the NHSC in <u>State v.</u>
<u>Pepin</u>, 159 N.H. 310, 311, 982 A.2d 364, 365 (2009), and <u>State v.</u>
<u>Thompson</u>, 161 N.H. 507, 528, 20 A.3d 242, 258 (2011), however,
the state procedural bar for claims that could have been raised
in the NHSC in a direct appeal of a criminal conviction does not
generally apply to ineffective assistance of counsel claims.
Accordingly, this court concludes that federal habeas review of
the merits of Burns's ineffective assistance claim is not
barred.  See <u>Pina</u>, 565 F.3d at 53 (rejecting, as not regularly
followed, similar waiver rule cited by gatekeeper justice of
Massachusetts Supreme Judicial Court, and finding that federal
habeas review was not precluded).

In denying Burns's pro se motion to dismiss counsel, the
superior court found to be "meritless" Burns's claim that
counsel should be dismissed for having failed to object to
certain testimony at trial; the superior court characterized
that claim as arising out of Burns's dissatisfaction with
counsel's strategic decision-making, and further found that
trial counsel had provided "exemplary" representation of Burns.
As to this aspect of Burns's ineffective assistance of counsel
claim, this court's review of that record demonstrates the
reasonableness of the superior court's finding that the decision
not to object to the testimony at issue was the product of
strategic decision-making.  Moreover, to the extent that the

superior court implicitly based its finding that the ineffective assistance claim lacked merit on Burns's failure to show prejudice, the record before that court supports the reasonableness of that finding.

The evidence of guilt was substantial, and included Burns's incriminating statements to the police, the victim's testimony, and medical evidence, Burns failed to demonstrate that a different result would have obtained if counsel had objected to testimony regarding:  Burns's doing drugs, spending time in jail, and serving time on probation; the investigating officer's statements about the crime scene; and the charges against Burns that were subsequently dismissed.  Accordingly, the court should deny the petition and grant the motion for summary judgment as to this aspect of Burns's Sixth Amendment claim.

        7.   Introducing Prior Bad Acts and Motion in Limine

In his petition, Burns contends that his trial counsel's conduct in introducing evidence of Burns's past drug use, cocaine addiction, and other "prior bad acts" showed that counsel's performance was substandard and prejudicial to Burns's defense.  Additionally, Burns has asserted that counsel's performance was deficient because he failed to file a motion in limine to preclude evidence that Burns had been jailed on dismissed charges, had been on probation, had been at the

Portsmouth Pavilion (a drug treatment/mental health care facility), and was subject to allegations that he misappropriated trust funds.

Although the superior court did not specifically address the merits of this claim, this court may deem the claim subsumed within the superior court's rejection of Burns's claims challenging counsel's trial preparation and failure to object to evidence of Burns's prior bad acts.  To the extent that Burns did not procedurally default the claim, it must be denied because of Burns's failure to show prejudice, given the substantial evidence of guilt introduced at trial.  Accordingly, the motion for summary judgment should be granted, and the petition denied, as to these claims.

### 8.   Failing to Object to Closing Argument

Burns asserts that counsel's failure to object to the state's closing argument, in which the state appealed to the juror's sympathies, constituted ineffective assistance of counsel.  During the hearing on the motion for a new trial, defense counsel testified that he chose not to object because: he considered the statements to be within the latitude granted to counsel in closings; the court had instructed the jury that arguments of counsel were not evidence; and he construed the prosecutor's argument, at the time, to be emotional, but not to

be improper appeals to the jury's emotions.  The superior court ruled that counsel's decision not to object to those portions of the state's closing was a tactical decision, and that Burns had failed to show prejudice resulting from that decision.

Given the entire record before the state court, including the jury instruction that the closing arguments were not evidence, and the substantial evidence of guilt, the superior court's finding that Burns failed to show prejudice is not unreasonable.  Moreover, the court's finding does not constitute an unreasonable application of federal law to the facts of Burns's case.  See, e.g., Mello v. DiPaulo, 295 F.3d 137, 148 (1st Cir. 2002) (denying federal habeas relief on claim challenging prosecutor's closing argument, which exhorted jury to do its duty, where closing was not shown to have affected trial outcome, in light of jury instructions and significant evidence of guilt).  Accordingly, summary judgment on the issue should be granted, and the petition denied on this aspect of Burns's Sixth Amendment claim.

### 9.   Objection to Juror and Request for Voir Dire

In ruling on the merits of the ineffective assistance of counsel claim as to the juror potentially biased by contact with a police officer, the superior court specifically found that counsel made a strategic decision not to object to the juror.

Counsel made that decision after consulting with Burns and concluding that the juror, who stated he had not been biased by his contacts with the officer, was favorably inclined towards Burns.  Moreover, the court found that Burns had not shown how the result would have been different had counsel requested further voir dire.

In light of the state court record, this court finds reasonable the superior court's conclusion that there was no prejudice to Burns.  The state court properly applied the relevant legal standard for ineffective assistance of counsel to the facts of the case.  Accordingly, summary judgment on this claim is appropriate, and this claim in the petition should be denied.

### 10.   Cumulative Effect

Burns has asserted that the cumulative effect of any deficiencies in counsel's performance prejudiced Burns.  This issue was included in Burns's application for discretionary review before the NHSC, but the state courts did not rule on the issue on the merits.  Where, as here, federal claims raised in a § 2254 petition were raised in, but never addressed by, the state courts, "federal review is de novo."  Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007); see also Lynch v. Ficco, 438 F.3d

35, 44 (1st Cir. 2006) (federal claim raised before state court but left unresolved is subject to de novo review).

The court may consider the cumulative effect of counsel's errors in determining whether a defendant has been prejudiced. See Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005).  A "'cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, . . . and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (quoting Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003)).

Here, the superior court specifically found that Burns's showing of prejudice was insufficient as to:  (1) the decision not to call the victim's brother, (2) the decision not to object to the potentially tainted juror, (3) the decision not to request further voir dire of the juror, and (4) the decision not to object to the prosecutor's closing argument.  There is no indication in the record that a cumulative error analysis would yield a different result, even if that analysis encompassed counsel's alleged errors as to evidence of Burns's prior bad acts.  Whether considered individually or cumulatively, the aspects of counsel's trial preparation and tactics alleged to be deficient by Burns have not been shown to have caused him

42

prejudice, where the evidence supporting a finding of guilt was substantial.  Accordingly, summary judgment should be granted, and the petition denied, on the cumulative error aspect of Burns's Sixth Amendment claim.

VII. <u>Certificate of Appealability</u>

The § 2254 Rules require the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the party."  § 2254 Rule 11(a).  The court will issue the certificate "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Burns has failed to make such a showing. Accordingly, the court should deny a certificate of appealability in this case.

## Conclusion

For the foregoing reasons, the court should find that petitioner has failed to demonstrate that he is entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The motion for summary judgment (doc. no. 33) should be granted.  The petition for a writ of habeas corpus (doc. nos. 1, 13-14, and 24) should be denied.  Should the court adopt this recommendation, the court should also deny a certificate of appealability.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya B. McCafferty
United States Magistrate Judge

Date: May 9, 2012

cc:  David Burns, pro se
     Elizabeth C. Woodcock, Esq.

LBM:nmd